IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| JESSE BROWN, | ) | |
| | ) | |
| Plaintiff | ) | 1:24-CV-00317-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| LAUREL HARRY, SECRETARY OF | ) | |
| CORRECTIONS, *et al.*, | ) | MEMORANDUM OPINION[1] |
| | ) | |
| Defendants | ) | IN RE: ECF NO. 34 |
| | ) | |

I.    Background and Relevant Procedural History

Plaintiff Jesse Brown, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), brings this civil rights action against three DOC officials: Patricia Thompson, Vandernoof, and Matthew Loreti, and Laurel Harry (collectively, "Defendants"). Brown's Amended Complaint (ECF No. 31) is his operative pleading. It asserts claims under 42 U.S.C. § 1983 arising out of Defendant Loreti's alleged use of excessive force against him, Defendant Vandernoof's alleged destruction of his legal papers and other personal property, and Defendants Harry and Thompson's alleged failure to properly supervise and discipline Loreti and Vandernoof.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c).

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Brown's Amended Complaint.  For the reasons explained herein, the motion will be granted.

II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court accepts as true the facts alleged in the complaint and draws the reasonable inferences from those facts in favor of the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). To survive a motion to dismiss, the complaint must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (citation omitted).

Finally, because Brown is proceeding pro se, his Amended Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the Court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his confusion of legal theories. *See Mader v. Phamatech, Inc.*, 2026 WL 879173, at *3 (W.D. Pa. Mar. 31, 2026) (citing *Boag v. MacDougall*, 454 U.S. 364 (1982)). But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted).

III.    Factual Allegations and Claims

Consistent with the foregoing standard, the following factual allegations of Brown's Amended Complaint are accepted as true for purposes of the Defendants' motion to dismiss.

Brown was previously housed at the DOC's State Correctional Institution at Albion ("SCI-Albion").[2] ECF No. 31, p. 1. On December 20, 2023, Defendant Loreti, a corrections officer at that prison, told another inmate that Brown was "a rat, snitch, and a murderer." *Id.*, pp. 2-3, ¶ 10. This exchange somehow prompted a physical altercation during which Loreti "struck Plaintiff with close [sic] fist multiple times in the face." *Id.* Brown sustained bruises and swelling to his face and a swollen lip during the altercation. *Id.* Brown was placed in the restrictive housing unit ("RHU")

---

[2] Brown is currently housed at the DOC's State Correctional Institution at Camp Hill.

that same day. Defendant Vandernoof packed Brown's belongings from his regular cell due to his impending transfer to the RHU. *Id.*, ¶ 11. Vandernoof destroyed Brown's property, including legal materials, court documents, and his television. *Id.* Neither Defendant Laurel Harry, the Secretary of the DOC, nor Defendant Patricia Thompson, the Facility Manager at SCI-Albion, disciplined Defendants Loreti or Vandernoof for their misconduct or otherwise took any corrective action despite knowledge of their misconduct. *Id.*, ¶ 12. Brown remained in the RHU at SCI-Albion until his transfer to the State Correctional Institution at Rockview on January 9, 2024. *Id.*, ¶ 25.

Based on the foregoing allegations, Brown asserts the following claims: (1) an Eighth Amendment excessive force claim against Defendant Loreti, (2) a Fourteenth Amendment due process claim against Defendant Vandernoof based on the destruction of his property, (3) a First Amendment retaliation claim against all Defendants, and (4) a supervisory liability claim against Defendants Harry and Thompson.

In support of their motion to dismiss, Defendants assert: (1) Brown failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); (2) Brown's damages claims against them in their official capacities are barred by the Eleventh Amendment to the Constitution; (3) the Amended Complaint fails to support the personal involvement of Defendants Harry and Thompson; (4) the Amended Complaint fails to state an Eighth Amendment excessive force claim against Defendant Loreti; and (5) the Amended Complaint fails

to state a Fourteenth Amendment due process claim against Defendant Vandernoof based on his destruction of Brown's personal property.  ECF No. 34.

IV.  Discussion

A.  Although the grievance records Brown attached to his Amended Complaint evidence that he did not comply with grievance and appeal deadlines, Brown has raised potential "unavailability" of administrative remedies, which cannot be resolved on a motion to dismiss.

Exhaustion of administrative remedies under the PLRA is "a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, ... it constitutes a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013) (cleaned up, citations omitted).  As such, it is an "issue that the District Court must address before it can reach the merits of a prisoner's complaint." *Brown v. Sprenkle,* 827 Fed. Appx. 229, 231 (3d Cir. 2020).  Therefore, the Court will first assess Defendants' exhaustion defense before reaching their motion's challenges to the merits of Brown's claims.

Failure to exhaust administrative remedies under the PLRA is an affirmative defense that defendants must plead and prove. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  As such, it is rarely appropriate for determination on a Rule 12(b)(6) motion to dismiss. The Court may grant a motion to dismiss based on this affirmative defense only when a plaintiff essentially acknowledges his failure to exhaust on the face of the complaint and it "present[s] an insuperable barrier to recovery by the plaintiff." *Ray v. Kertes*, 285 F.3d 287, 295 n.8 (3d Cir. 2002) (citing *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)).  The PLRA requires only "exhaustion of

5

those administrative remedies that are 'available.'" *Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). It follows then that dismissal on a Rule 12(b)(6) motion is appropriate only where the complaint establishes "that there was an available administrative remedy, and that [the plaintiff] did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Thus, even where the complaint demonstrates a plaintiff's failure to complete the administrative remedies process, dismissal is inappropriate where it is unclear "whether [the plaintiff] was thwarted in his attempts to do so." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) ("only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse").

In this case, Brown has attached grievance records as exhibits to his Amended Complaint. On a motion to dismiss, the Court may consider documents the plaintiff attaches to a complaint and upon which he relies or refers without converting the motion to one for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Such documents include "indisputably authentic" grievance records. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). *See also Cooper v. Martucchi*, 2015 WL 4773450, at *2 (W.D. Pa. Aug. 12, 2015) (noting that "the district court in *Spruill* considered the grievance documents attached to the defendants' motion to dismiss only because 'Spruill himself refer[ed] to the grievances in his complaint to show exhaustion'").

6

Here, the records Brown attached to his Amended Complaint relate to the two grievances relevant to his claims: Grievance 1089955 and Grievance 1086564.[3] Grievance 1089955 relates to Defendant Loreti's alleged use of excessive force against Brown on December 20, 2023. *See* ECF No. 31-3, p. 2. The grievance, however, is dated May 14, 2024. *Id.*, p. 1. As a first step in the grievance process, the DOC's general grievance policy, DC-ADM 804, requires an inmate to submit a written grievance for review by the Facility Grievance Coordinator ("FGC") *"within 15 working days after the event upon which the claim is based."* DC-ADM 804, § 1.A.8 (emphasis supplied). Brown expressly bases his excessive force claim on Loreti's use of force on December 20, 2023. Therefore, under DC-ADM 804, § 1.A.8, Brown had to submit any grievance based on that incident no later than January 12, 2024, fifteen working days thereafter. On May 28, 2024, the FGC denied Grievance 1089955 as untimely.[4] ECF No. 31-3, p. 3. This decision was clearly correct unless some basis existed to excuse Brown's delay.

---

[3] Defendants also submitted an affidavit from Michael Bell, an employee of the DOC Secretary's Office of Inmate Grievances and Appeals in support of their exhaustion defense. The Court will not consider this document in connection with Defendants' motion to dismiss because an affidavit is never indisputably authentic. *See Washington v. Link*, 750 Fed. Appx. 84, 87 (3d Cir. 2018) (noting that affidavits and declarations are neither "indisputably authentic for Rule 12(b)(6) purposes" nor "conclusive even at the summary judgment stage if they are controverted by other evidence..."); *Escalera v. Harry*, 2016 WL 6694502, at *6 (M.D. Pa. Sept. 28, 2016), *report and recommendation adopted*, 2016 WL 6582065 (M.D. Pa. Nov. 7, 2016).

[4] After denial of the grievance, Brown appealed to the Facility Manager. *See* ECF No. 31-3, p. 4. Although Brown dated his appeal for June 13, 2024, it was not received by the Facility Manager until June 27, 2024. ECF No. 31-3, pp. 4-5. DC-ADM 804 provides that "if the FGC has rejected the grievance or the inmate is otherwise dissatisfied with the initial review response," the inmate may appeal to the prison's Facility Manager "within 15 working days from the date" the inmate receives "the initial review response/rejection." *Id.* at § 2.A.1.a, b; *see also Lewis v. Sutherland*, 2024 WL 6957719, at *5 (W.D. Pa. Oct. 18, 2024), *report and recommendation adopted*, 2025 WL 3618279 (W.D. Pa. Dec. 12, 2025). This appeal was also denied as untimely. Brown then filed his final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") on July 1, 2024. *Id.*, p. 6. SOIGA denied his grievance appeal on August 9, 2024, because "an appeal to final review is not permitted when you fail to comply with submission procedures." *Id.*, p. 7.

Grievance 1086564 relates to his claim against Vandernoof based on the loss or destruction of his personal property. ECF No. 31-3, p. 8. Brown dated the grievance for April 8, 2024, but it was not received for initial review until May 3, 2024. *Id.* This grievance complained that Brown's tablet was lost, his television was inoperable, and that his pictures, legal papers, and other mail were also missing "when [he] got to SCI Rockview on 1-11-24." *Id.* It attributed the damaged and lost property to Vandernoof, who inventoried and packed the property at SCI-Albion in anticipation of his transfer to SCI-Rockview. Brown arrived at SCI-Rockview on January 9, 2024, but the final items of his personal property arrived at SCI-Rockview on April 6, 2024. *Id.* The grievance acknowledged receipt of his television remote and photographs but complained that his tablet and trial transcripts remained missing, and his cable cord was damaged. *Id.*, pp. 8-9.

The FGC denied Brown's grievance at initial review on May 17, 2024. *Id.*, p. 10. In denying Brown's grievance, the FGC noted Brown's acknowledgment that most of the items he claimed were missing had now been accounted for. *Id.* Brown had fifteen working days to file an appeal to the Facility Manager, that is, until June 10, 2024. Although Brown submitted an appeal and dated it for June 13, 2024, it was not received by the Facility Manager until June 27, 2024. *See id.*, p. 13. The Facility Manager dismissed the appeal as untimely that same day. *Id.* Brown received the Facility Manager's response on July 1, 2024, and appealed to SOIGA, which dismissed his appeal as procedurally defaulted on August 9, 2024. *Id.*, p.16. Thus, Grievance 1086564 also presents timeliness and procedural default issues.

8

"An untimely or otherwise procedurally defective administrative grievance or appeal results in a procedural default and does not satisfy the exhaustion requirement, thereby precluding an action in federal court." *Watson v. Fisher*, 558 Fed. Appx. 141, 144 (3d Cir. 2014) (citing *Woodford*, 548 U.S. at 90–91) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). But as noted, a prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi*, 904 F.3d at 268 (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is therefore excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). Apparently anticipating Defendants' exhaustion argument, Brown's Amended Complaint alleges that the Defendants prevented his access to grievance forms and otherwise impeded his ability to pursue his grievances. *See* ECF No. 31, ¶¶ 13-27. These allegations are somewhat vague and conclusory, but unlike the factual allegations upon which he bases his substantive claims, Brown has no pleading obligation with respect to Defendants' exhaustion defense. The Court

9

therefore finds that Brown has raised unavailability of administrative remedies as a potential excuse for the untimeliness of his grievance and appeal submissions.

Whether Brown's grievance remedies were rendered unavailable, however, involves issues of fact that cannot properly be resolved on a motion to dismiss. Therefore, if this case proceeds beyond the pleading stage, the Court will conduct an evidentiary hearing to resolve the factual disputes regarding possible unavailability. *See Small v. Camden County*, 728 F.3d 265, 270-271 (3d Cir. 2013); *Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018). A hearing pursuant to *Small* and *Paladino* is used to resolve issues of fact where a defendant has produced a record to support the plaintiff's procedural default, such as his failure to properly complete the grievance process, and the plaintiff has responded that some action or omission by the defendant rendered his or her grievance remedies "unavailable." *See Small*, 728 F.3d at 271 (holding "that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury"). If this case proceeds beyond the pleadings, this hearing will be scheduled by separate order. To the extent Defendants' pending motion to dismiss relies upon Brown's failure to exhaust administrative remedies, the motion will be denied without prejudice pending the hearing.

Because the Court must necessarily defer a decision on Defendants' exhaustion defense until the evidentiary hearing, it has the discretion to address or defer evaluation of the sufficiency of Brown's claims in the meantime. *See Hurst v. Snider*, 530 Fed. Appx. 168, 169 n.3 (3d Cir. 2013) ("Given the uncertainty regarding

exhaustion, we have chosen to address the substance of Hurst's claims."); *Watkins v. Merriel*, 2015 WL 5722819, at *1 (D.N.J. Sept. 29, 2015) (deferring issues of exhaustion pending hearing and development of record). The Court chooses to reach the sufficiency of Brown's claims because doing so may ultimately render moot, in whole or in part, the more complicated issues relating to exhaustion.

B. Any claims for money damages against the Defendants in their official capacities will be dismissed.

Subject to certain narrow exceptions, the Eleventh Amendment to the Constitution bars all lawsuits brought in federal court against states regardless of the nature of the relief sought. U.S. Const. Amend. XI. This immunity extends to state agencies and departments. *See Clark v. Zaken*, 2026 WL 1096368, at *3 (W.D. Pa. Apr. 2, 2026), *report and recommendation adopted*, 2026 WL 1093464 (W.D. Pa. Apr. 22, 2026). The Eleventh Amendment also "bars a suit [for monetary relief] against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury."[5] *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd* 502 U.S. 21 (1991). Therefore, the Eleventh Amendment bars any claim for money damages to the extent Brown asserts the claims against any Defendant in his or her official capacity.

---

[5] Brown's claims for money damages against the Defendants in their *individual capacities* are not barred. The Eleventh Amendment also does not bar official capacity claims against state officials for prospective injunctive or declaratory relief to address an ongoing violation of federal law. *Id.* (citing *Ex parte Young*, 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002)). But the Amended Complaint includes no claims for prospective injunctive or declaratory relief.

C. The Amended Complaint fails to allege facts to support Brown's Eighth Amendment excessive force claim against Defendant Loreti.

A corrections officer's use of excessive force against an inmate violates the Eighth Amendment prohibition on cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Whether a particular use of force was excessive depends on "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). In resolving this question, a court must evaluate "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009). "Force that exceeds that which is reasonable and necessary under the circumstances is actionable." *Id.*

The Amended Complaint fails to allege facts sufficient to allow the Court to evaluate whether Loreti's use of force was reasonable and necessary. It alleges that Loreti had told another inmate that Brown was a "rat, snitch[,] and a murderer" and that these comments somehow put Brown "in a physical altercation which Loreti struck [Brown] with close fist multiple times in the face," causing Brown bruises to his face and a swollen lip. ECF No. 31, ¶ 10. The Amended Complaint does not identify whether Brown or Loreti initiated the physical altercation or any other facts upon which the Court can assess the need for force and the relationship between the

12

need and the amount of force that was used. The few facts alleged plausibly support an inference that Brown initiated the altercation, albeit in response to improper remarks by Loreti. This is further supported by grievance records Brown attached to his Amended Complaint. *See* ECF No. 31-3, p. 6 ("Officer Loreti provoked me into a fight..."). But if Brown initiated the fight, then Loreti's use of force may have been reasonable under the circumstances. "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, though plaintiffs need only "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 569. The factual allegations of Brown's Amended Complaint are far too few and vague to raise his excessive force claim above the speculative level. This claim will therefore be dismissed.

> D. Brown's claims against Defendants Harry and Thompson will be dismissed based on lack of personal involvement.

In an action under § 1983, the plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *See Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). Absent specific allegations that a defendant participated in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 781–82 (W.D. Pa. 2013)

13

(dismissing claims under Rule 12(b)(6) where the plaintiffs failed to allege sufficient facts showing that certain defendants played an affirmative role in the alleged Eighth Amendment violation).

Brown alleges that Harry and Thompson were somehow aware of Loreti's assault and Vandernoof's destruction of his personal property and failed to discipline them. See ECF No. 31, ¶¶ 10, 25. Brown's allegations of knowledge against Harry and Thompson are conclusory and unsupported by any factual allegations of the Amended Complaint. As such, the Court does not accept them as true when evaluating the sufficiency of Brown's claims. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Supervisory officials such as Harry and Thompson are subject to liability where it is shown that they "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity," including the specifics of each defendant's direct involvement in the conduct that violated the plaintiff's rights or the source of each defendant's knowledge of the violation and how his acquiescence contributed to it. *Rode*, 845 F.2d at 1207-08. *See also Evancho*, 423 F.3d at 354. The Amended Complaint alleges no facts to support that Harry or Thompson participated in, authorized, or acquiesced in the

alleged misconduct of Harry or Thompson. It therefore fails to state a claim against Harry or Thompson.

E. Whether construed as a Fourth, Fourteenth, or First Amendment claim, Brown's loss-of-property claim against Vandernoof fails as a matter of law.

Brown frames his property destruction claim against Vandernoof as a violation of the Fourth Amendment. So framed, the claim clearly fails because prisoners have no reasonable expectation of privacy in their cells and no cognizable Fourth Amendment right arising from the seizure or destruction of their property. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984). But the Court is obliged to construe the factual allegations of a pro se plaintiff's complaint liberally and apply the law to those allegations despite the plaintiff's confusion of legal theories. The Court will therefore construe Brown's claim against Vandernoof as a Fourteenth Amendment due process claim, which more appropriately applies to a prisoner's assertion that state actors deprived him of personal property. So construed, however, the claim fares no better.

"Deprivation of inmate property by prison officials does not give rise to cognizable due process claim if the prisoner has an adequate post-deprivation state remedy." *Crosby v. Piazza*, 465 Fed. Appx 168, 172 (3d Cir. 2012) (citing *Hudson*, 468 U.S. at 533). Adequate remedies were available here as Brown was afforded an opportunity to file an administrative grievance. *See Dip v. Brittain*, 2026 WL 1362515, at *5 (M.D. Pa. May 15, 2026). To the extent that Brown was dissatisfied with the outcome of the administrative process, he could have filed a state court tort

action. *Hudson*, 468 U.S. at 535. Therefore, the Court will dismiss the Fourteenth Amendment claim for the loss of property with prejudice.

Brown also mentions the deprivation of his "legal papers" and "trial transcripts" in connection with this claim. *See, e.g.*, ECF No. 31-3, pp. 8-9. A plaintiff's claim that prison officials misplaced or destroyed his legal material must also be analyzed under the Fourteenth Amendment. To state a cognizable constitutional claim under § 1983 for the deprivation of legal property, a state prisoner must proceed under one of two distinct legal theories: a First and Fourteenth Amendment right of access to the courts, or a Fourteenth Amendment procedural due process claim.

To the extent Brown asserts that the loss of his legal materials impeded his ability to litigate, his claim is properly characterized as a denial of his constitutional right of access to the courts. It is well-established that prisoners have a protected right of access to the courts. *See Bound v. Smith*, 430 U.S. 817, 821 (1977). However, to state a claim for a violation of this right, a plaintiff must demonstrate that he suffered an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). To establish an actual injury, a prisoner cannot merely allege that his papers were misplaced; he must show that the loss of the materials directly frustrated or impeded his ability to pursue a non-frivolous legal claim challenging his conviction or conditions of confinement. *Id.* at 354–55. Absent a showing that a pending appeal, habeas petition, or civil rights action was dismissed or fundamentally compromised as a direct result of the defendant's actions, an access-to-the-courts claim cannot survive.

16

Brown's claim lacks such allegations. Although his grievance mentions an appeal in state court and a "2nd PCRA that was file[d] on 8-8-23," Brown does not plead the effect of his lost legal papers on those proceedings or the significance of that deprivation to future proceedings. *See, e.g., Shareef v. Moore,* 844 Fed. Appx. 487, 488 (3d Cir. 2021) (alleged destruction of legal papers claim failed where plaintiff failed to identify a nonfrivolous or arguable legal claim he lost, or what was contained in his destroyed legal documents and how the destroyed documents would have led to a different outcome). The Amended Complaint therefore fails to state an access-to-courts claim against Vandernoof.

The Amended Complaint also references the First Amendment in connection to Brown's deprivation of property claim against Vandernoof. *See* ECF No. 31, ¶ 29. To the extent this reference can be construed as a First Amendment retaliation claim, it also fails. A prisoner plaintiff asserting a First Amendment retaliation claim under § 1983, including one predicated on the destruction or deprivation of personal property, must allege facts to support three elements. First, a plaintiff must allege that he was engaged in activity protected by the First Amendment at the time of, or in the period leading up to, the alleged retaliation. In the prison context, the most commonly invoked protected activities are the filing of inmate grievances and the pursuit of civil litigation, both of which are recognized as constitutionally protected. *See Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003). To support this element, the plaintiff must factually identify the protected conduct. Conclusory allegations that

17

the plaintiff engaged in protected conduct or exercised his First Amendment rights are insufficient. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Second, a plaintiff must allege that the defendant took an adverse action against him. In the retaliation context, an action is adverse if it would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This is an objective rather than subjective standard. Courts have recognized that the deliberate destruction or confiscation of a prisoner's personal property, particularly property with legal, sentimental, or practical significance, such as trial transcripts, legal papers, or personal correspondence, can satisfy this element. However, a *de minimis* property deprivation will not.

Third, a plaintiff must allege facts to support a causal link between the protected activity and the adverse action, specifically, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take the adverse action. *Rauser*, 241 F.3d at 333-34. This is the element that most frequently proves fatal to retaliation claims at the pleading stage, because a bare allegation that the defendant "retaliated" against the plaintiff, without supporting facts from which retaliatory motive can plausibly be inferred, is insufficient. *Fantone*, 780 F.3d at 191 ("[A] prisoner's claim of retaliation fails if he cannot demonstrate that his constitutionally protected conduct was a motivating factor in the defendants' actions."). A plausible inference of causation may be supported by temporal proximity between the protected activity and the adverse action, *see Watson v. Rozum,* 834 F.3d

18

417, 424 (3d Cir. 2016) (holding that causation can be shown through "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action ..."), statements by the defendant indicating retaliatory animus, a pattern of antagonism following the protected activity, or a combination of these factors. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267-68 (3d Cir. 2007).

"Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied*, 516 U.S. 1084 (1996); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)). *See also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (noting that retaliation claims are regarded with some skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct). In this case, the few facts alleged in Brown's Amended Complaint are insufficient to support the protected conduct and causation elements of a retaliation claim. Accordingly, Brown's First Amendment retaliation claim against Vandernoof will be dismissed.

IV.    Conclusion

For the foregoing reasons, the Court will grant Defendants' motion to dismiss based on the Amended Complaint's failure to allege facts to support any of Brown's claims. Brown's claim for money damages against the Defendants in their official capacities and his due process claim based on destruction of his personal property

will be dismissed with prejudice because any attempt to amend these claims would be futile. All other claims will be dismissed without prejudice and with leave to file a second amended complaint to allow Brown to attempt to cure the factual insufficiencies identified in this Memorandum Opinion. If Brown fails to file a second amended complaint by the deadline set by the Court's dismissal order, the dismissal of these claims will be converted to a dismissal with prejudice.

If this case proceeds beyond the pleading stage, the Court will schedule an evidentiary hearing to resolve the factual disputes regarding possible unavailability of Brown's administrative remedies in accordance with *Small v. Camden County*, 728 F.3d 265, 270-271 (3d Cir. 2013) and *Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018).

A separate order follows.

DATED this 10th day of June, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE